# VACATION OF HENRY STREET, ALLEGHENY CITY.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF ALLEGHENY COUNTY.

Argued October 30, 1888—Decided January 7, 1889.

1. By the act of May 8, 1854, P. L. 645, jurisdiction is conferred upon the Court of Quarter Sessions of the proper county to vacate any public or private lane, alley, road or highway, in an incorporated city or elsewhere, which has become useless to the public by reason of forming town plots or otherwise.

2. The proceedings under said act are not subject to the restrictions of § 22, act of June 13, 1836, P. L. 558, or of § 1, act of May 3, 1855, P.

Statement of Facts.

L. 422, as to streets, lanes or roads within incorporated cities or boroughs, nor is the practice therein regulated by the provisions of said acts entitling exceptants to the appointment of reviewers.

3. Whether the provisions of said act, as affecting a highway in Allegheny city, a city of the third class under the act of May 23, 1874, P. L. 230, are affected by the jurisdictional provisions of § 13 of the latter act, or whether the latter act is unconstitutional, are questions not raised, as the provisions of the act of 1874 have not been accepted by said city.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 202 October Term 1888, Sup. Ct.; court below, No. 1 September Term 1887, Q. S.

On September 5, 1887, the petition of more than twelve freeholders of the vicinity of a road or highway known as Henry street, was presented, representing that before that portion of what is known as Pleasant Valley, in the Second ward, Allegheny city, was taken into the city, a public road or highway was laid out therein by the then proprietor, to run from Taggart street across to the Brighton road and up the hill to connect with a road or highway running to Washington avenue; that a plan of said road or highway was recorded in the recorder's office of Allegheny county, with no name given it on said plan, but it was called Henry street by the people of the vicinity; that a portion of it had been abandoned and built up, so that all that was left of it was the portion extending from Taggart street to Brighton road, a distance of about one hundred and fifty feet; that said road had never been traveled by teams, owing to its steep grade; and, it had become useless to the public and those having land bounding thereon, for the reasons stated, and also because: (1) since the location of said public road or highway on said plan the whole of it had been taken into the city of Allegheny, and town plots had been formed in the vicinity thereof; (2) a new public road or highway called Brighton Place had been constructed by the Federal St. and P. V. Pass. Ry. Co. (one of the petitioners), about 600 feet farther south, which was 40 feet wide, of easy grade, extending from Taggart street to Brighton road, graded, paved and curbed at the expense of said company, and said company would open the same to the public on the vacation of said public road or highway called

Henry street, and Brighton Place would supply all demands of the public and was the only practicable route for a highway, etc.; praying for a vacation, etc.

Upon the presentation of this petition, the court granted a rule to show cause why the prayer of the petition should not be granted, returnable to October 8, 1887; said rule to be published twice a week for four weeks in The Pittsburgh Post, "and the court hereby appoints [six persons named], road viewers, to ascertain the facts and make report for the information and final judgment of the court, said report returnable on October 8, 1887." On September 15th, the return day of the rule was enlarged to the first Monday of December, 1887.

On October 16, 1887, proof of publication of notice was filed and on December 10, 1887, the report of the viewers setting forth fully the facts found and recommending the vacation prayed for, was presented in open court, approved nisi, and ordered to be filed; "and it is hereby ordered and decreed that the said Henry street, extending from Union avenue or Taggart street to Brighton road, in the Second ward, Allegheny, be vacated, unless exceptions thereto are filed within thirty days from this date."

On January 9, 1888, Geo. W. Lanz, and thirty others, representing that they resided and owned real estate "in the vicinity of Henry street," filed sixteen exceptions to the report of the viewers, verified by the oath of one of the exceptants, some of which exceptions were as follows:

1. That the Court of Quarter Sessions had no jurisdiction in the premises.

13. The grade of said Henry street if properly made, would not be impracticable, and proceedings have already been commenced by the citizens residing in the vicinity of said street to have the same graded and paved by the city councils.

14. There have been no town plots formed adjacent to or in the vicinity of said Henry street since the dedication of said street to public use.

The exceptants moved for leave to be heard upon the facts on testimony to be taken, and that the proceedings for vacating said Henry street be dismissed.

On February 23, 1888, argument having been had upon the exceptions, the court, STOWE, P. J., ruled that the act of

May 8, 1854, P. L. 645, extended to cases arising in cities, where there was no power vested in councils to vacate streets and alleys under the conditions named in the act; and, so far as the court could discover, the city of Allegheny had no such power, before the passage of the municipal act of May 23, 1874, P. L. 230, but that act, even if not unconstitutional, had not been accepted by the city, and therefore the Court of Quarter Sessions had jurisdiction.

The determination of the questions arising upon the other exceptions was held over, and subsequently, March 9, 1888, the fifth day of March Term, the court ruled that certain exceptions were matters arising upon the face of the report, and could properly be decided by the court without a reference to a commissioner to take testimony; others were vague and indefinite, and others were matters for the viewers to determine, proceeding:

The act authorizes the appointment of viewers to report for the information and judgment of the court. It is to relieve the court that the act allows this to be done, and it would be bad practice, when it has been done, to refuse to be governed by it, except where the case made by the exceptant was so clear as to satisfy the court that the report was produced by some undue influence or interest, which would make it unconscionable to regard it, and this should be done by the exceptant, showing by his affidavits such facts as, if true, would clearly lead to that conclusion.

I have carefully considered all the exceptions filed in this case, and also the suggestions of counsel made on argument, as well as those set out in their briefs, and am decidedly of the opinion that the motion for a commissioner to take testimony should be refused.

And it is now ordered, etc., that the exceptions filed in the above case be all overruled, and also, that the rule taken therein to show cause why the street mentioned in said petition and rule should not be closed and vacated, be made absolute. Rule absolute, and said Henry street, extending from Union avenue, or Taggart street, to Brighton road, is hereby closed up and vacated.

On March 17, 1888, certain exceptants presented a petition

reciting the foregoing proceedings and their interest therein, praying the court to set aside the decree made dismissing the exceptions and vacating said street, and to appoint proper persons to review, etc. This petition was handed to WHITE, J., who granted a rule, of course, to which an answer was filed, and on September 22, 1888, the court, WHITE, J., discharged the rule, saying inter alia: "If the order for vacation was premature, and the petitioners were of right entitled to a review, the question can be raised on the record as it now stands."

The exceptants then took this writ, assigning errors:

1. In dismissing the exception to the jurisdiction.

2. In refusing to dismiss the petition for vacation.

3. In ordering the vacation of the street.

6. In discharging the rule to set aside the order of vacation and for a review.

*Mr. James Balph* (with him *Mr. R. A. Balph*), for the plaintiffs in error:

1. By § 22, act of June 13, 1836, P. L. 558, the general road law of the state, jurisdiction to vacate any lane, street or highway in any city or borough, was expressly withheld from the courts, and it has not been conferred since. There is nothing in the act of May 8, 1854, P. L. 645, upon which this proceeding is predicated, indicating an intention to repeal the section of the act of 1836, referred to. This is demonstrated by the passage of the act of May 3, 1855, P. L. 422, authorizing the courts to change or vacate the whole or any part of any public or private road, etc., subject to the proviso that it should not apply to state roads, or to any street, lane or road within any incorporated city or borough. The act of 1854 is in pari materia with the act of 1836, and to be construed with it, to give effect to all the provisions of the act of 1836: Osage Street, 90 Pa. 114.

2. But assuming that the act of 1854 did give jurisdiction, our objection then is, that the jurisdiction can be exercised only in conjunction with the city authorities, or when it appears affirmatively that the city authorities recommend or concur in the proceedings. By § 13, act of May 23, 1874, P. L. 230, dividing the cities of the state into three classes, "the municipal

Arguments.

authorities and courts having jurisdiction, etc., shall have exclusive control and direction of the opening, widening, narrowing, vacating and changing grades of all streets, alleys and highways, within the limits of such city." And we submit that the formal acceptance of the act by the city was unnecessary to make that section operative. The first section of the act of 1874, divides the cities of the state into classes, and from the 2d to the 13th sections, inclusive, the act relates generally to all cities "now in existence by virtue of the laws of this commonwealth." The remaining sections of the act, including the 57th, relate to cities of the third class thereafter to be incorporated; and only the provisions of the act relating to cities of the third class "hereafter to be incorporated," require formal acceptance.

3. But this was not a public street; it was but a private way laid out by the owner of the soil. All persons, therefore, having interests and rights therein, and who are not petitioners, should have had notice in writing served upon them: Beatty's Plan, 104 Pa. 622. And this being a private way, and the proceeding under the act of 1854, it is not only necessary to notify in writing all persons in interest, but the act has a proviso that in the case of a private way laid out by the owners of the soil, "the same shall not be vacated without the consent of all persons for the time having an interest therein." Moreover, as the act of 1854, should be construed to be a part of the general road law of 1836, being in pari materia: 1 Kent's Com., 463; Neeld's Road, 1 Pa. 353; Sharett's Road, 8 Pa. 89; Keeling's Road, 59 Pa. 358, and as the court having assumed jurisdiction appointed "road viewers according to law," the subsequent proceeding should have been conducted as though viewers had been appointed in a proceeding under the act of 1836, and under the latter act parties interested, not satisfied with the report of viewers, are entitled to a review by petitioning for the same at or before the term next ensuing that to which the report is filed.

*Mr. William A. Stone,* for the defendants in error:

1. It is not claimed that any act of assembly, other than the act of April 23, 1874, P. L. 230, gives to Allegheny city power to vacate streets. But the city never accepted the provisions

of that act by ordinance, as provided in § 57 thereof. More-over, in Scranton Sch. D.'s App., 113 Pa. 176, this court decided that where an act like this one is to be operative only when an ordinance is passed accepting its provisions, it then becomes special legislation in conflict with § 7, article III., of the constitution, because the act in that event would apply only to the one or more cities that accepted it, and would not be general as to all cities of the third class. But even if § 13 of the act of 1874, be constitutional and applicable, the jurisdiction of the courts is preserved thereby, as the proceedings are to be had in such cases, " as are now required by law."

2. Osage Street, 90 Pa. 114, is inapplicable. That was an attempt by the court to vacate a street in a borough incorporated under the borough act of April 3, 1851, and it was held that because by that act the authority to vacate streets was vested in the burgess and council, the Court of Quarter Sessions had no power. But it was held in Sharett's Road, 8 Pa. 89, that if the act incorporating a borough confers no authority on the corporation to lay out and open, but only to regulate, repair and maintain the streets, lanes and alleys therein, the Court of Quarter Sessions possess the power, under the existing road laws to lay out and open streets and to cause the damage thereof to be assessed. Osage Street, supra, was not under the act of 1854, nor was that act referred to or considered. The jurisdiction of the Court of Quarter Sessions, under the act of 1854, was clearly recognized in Beatty's Plan, 104 Pa. 622.

3. The authorities cited by the exceptants, Neeld's Road, 1 Pa. 353, Sharett's Road, 8 Pa. 89, and Keeling's Road, 59 Pa. 358, were proceedings under special laws pertaining to under surface, private roads and the like, wherein provision was not made for carrying out the proceedings, and the provisions of the act of 1836 were borrowed; but the act of 1854, as applicable to proceedings such as in the present case is perfect and requires no aid from any other act. The act does not provide for the appointment of viewers " according to law," but that they shall " be appointed or drawn according to law." The viewers are to report, not alone for the information of the court, but for the information and final judgment of the court; clearly meaning that the court shall give final judgment on their report, without contemplating proceedings for a review.

Opinion, Mr. Justice Clark:

The Court of Quarter Sessions of the proper county has authority to inquire of, and to vacate the whole or any part of any public road, whenever the same shall become useless, inconvenient, and burdensome: act of June 13, 1836, P. L. 558, § 18; whether the same was originally laid out by authority of law or existed by prescription, or lapse of time: act of April 21, 1846, P. L. 416; also to vacate roads laid out, but not opened: act of June 13, 1836, § 19; also roads opened in part only: act of May 3, 1855, P. L. 422. But these powers, by the express words of the acts of 1836 and 1855, are not exercisable in the vacation of any street or highway within the limits of an incorporated borough or city; and, as the act of 1846 is in pari materia with the acts of 1836 and 1845, it has been held, that the Court of Quarter Sessions have no power under that act to vacate a street in a borough or city, dedicated by the owner to the public use: In re vacation of Osage Street, 90 Pa. 114. By the special statute of May 10, 1871, P. L. 704, the Court of Quarter Sessions of Allegheny county have power to vacate the whole or any part of any street, etc., laid out in any borough incorporated therein, in case the same has never been opened or used by the public.

It is plain that none of these statutes has any application whatever to the case in hand, for the authority in none of them extends to the vacation of a street or highway in an incorporated city. This is a proceeding, however, under the act of May 8, 1854, P. L. 645, which provides that the Court of Quarter Sessions of the proper county shall have authority to vacate any private or public highway, whether laid out by the public or by private owners, whenever, by reason of forming town plots or otherwise, they shall become useless to the public, and to those having lands bounding thereon. The method of procedure is specifically defined, and is, in most respects, different from the methods pursued under the act of 1836. It is contended that this act of 1854 should be construed in pari materia with the acts of 1836 and 1855, and that the restrictions contained in those acts should be held to apply to it as part of the general system. But that the act of 1854 was intended to apply to incorporated cities is manifest: not only is the act general in form, embracing all cities within its terms,

but it expressly provides that "in any city" the rule to show cause shall be published in one or more newspapers twice a week, and in other parts of the state once a week, etc. It is plain, we think, that the restrictions imposed by the acts of 1836 and 1855, in this respect, were not intended to apply in proceedings under the act of 1854. It is equally plain, also, from the specific and peculiar methods of procedure defined and established by the act of 1854, that the proceedings are wholly independent of, and are, therefore, not to be regulated by the practice under the acts of 1836 or 1855. Whenever, therefore, a case is presented covering the conditions specified in this act, whether in an incorporated city or elsewhere, the Court of Quarter Sessions of the proper county must take cognizance of it. If this proceeding had been in the forms prescribed by the act of 1836, it is plain that it would be irregular and could not be sustained; that was the precise question in In re Osage Street, supra.

From the petition we learn that before that portion of what is known as Pleasant Valley, in the Second ward of Allegheny, was taken into the city, a public road or highway was laid out and dedicated to the public use by the proprietor according to a plan duly recorded, to run from Taggart street across Brighton road to connect with another highway running to Washington avenue; that this highway was known as Henry street and was thirty feet wide; that a portion of this street has been abandoned and closed, only that part remaining which extends from Taggart street to Brighton road, a distance of one hundred and fifty feet; that the highway aforesaid and the adjoining property has been taken into and now constitutes a part of the city of Allegheny, and that by reason of forming of town plots and other matters specifically set forth, Henry street has become useless to the public and those having lands bounding thereon; it is upon these grounds that the vacation is prayed for. This certainly presented a case within the provisions of the act of 1854, and as the petition and proceedings are plainly under the provisions of that act, we are clearly of opinion that the court had full jurisdiction of the case.

It is contended, however, on the part of the plaintiff in error, that even if this be so, by the thirteenth section of the more recent act of May 23, 1874, P. L. 230, the exclusive con-

trol and direction of the opening, widening, narrowing, vácating, etc., of all streets, etc., within the limits of all cities in this commonwealth is vested in "the municipal authorities and the courts having jurisdiction" in such cases; that this jurisdiction must be exercised by the courts in conjunction with the municipal authorities, and that as the city of Allegheny has in no way consented to or recommended the vacation of Henry street, the courts cannot entertain jurisdiction. Without entering into any discussion of the purpose of this provision of the act of May 23, 1874, it is a sufficient answer to this contention that the city of Allegheny has not accepted or become subject to the act of 1874 nor to the act of April 11, 1876, P. L. 21, which is a supplement thereto. It is true that certain sections of this act of 1874 might appear to apply to all cities whether its provisions have been formally accepted or not, but a careful reading of the statute shows that these sections are applicable only to all cities of whatever class which by the terms of the act or by their acceptance have become subject to its provision.

The design of the act of 1874 was to establish a uniform and general system of government for all the cities of the commonwealth; it was not designed, however, to work a repeal of any municipal charter previously created by special enactment; yet, when the municipality voluntarily relinquishes the same and accepts the provisions of the act of 1874, in the manner designated therein, or suffers a repeal of its charter, the effect in either case is to bring the city or its inhabitants within the provisions of the general law of the state. The act applies not only to any city accepting its provisions, but to all cities hereafter to be created; it may be said, therefore, to apply to all cities of the commonwealth, as ultimately all may become subject to it without the re-enactment of any of its provisions.

As it is admitted that the city of Allegheny has never in any way become subject to the act of 1874, no question arises upon the proper construction of the thirteenth section or upon the constitutionality of that act; it will be time enough to consider those questions when they are properly presented.

But it is said that Henry street is only a private way laid out by the owner of the soil, and that notice of this proceeding

has not been given to all persons having interests and rights therein, nor has their consent been obtained as required by the act of 1854. This is plainly an afterthought. The petition sets forth that it is a "public road or highway" and that it was taken into the city of Allegheny as such. Upon presentation of the petition, a rule was entered to show cause why said "public road or highway described in said petition and known as Henry street should not be vacated." The exceptions filed do not deny that Henry street was a highway; on the contrary, it is described as "Henry street," and the thirteenth exception states that "proceedings have already been commenced by the citizens residing in the vicinity of said street to have the same graded and paved by the city councils." The record clearly exhibits a proceeding to vacate a public highway and a decree thereon in due form, and there is nothing to show that it was not a highway, unless it be an inference from the statement that it was originally laid out in a plan of lots by George Breed, the proprietor, in the year 1859; but, assuming this, the acceptance of it by the city would constitute it a public highway, and the decree of the court as to this, we think, is conclusive.

Upon an examination of the whole case we find no error, and the proceedings of the Quarter Sessions are affirmed.

