## CITY OF READING v. R. H. SAVAGE.

ERROR TO THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Re-argued February 2, 1889—Decided February 25, 1889.

1. The provisions of § 57, act of May 23, 1874, P. L. 269, making the act applicable to such cities of the third class, or any city of less than ten thousand inhabitants, theretofore incorporated, as may accept it, are not within the prohibitions of § 7, article III., of the constitution: Scranton Sch. D.'s App., 113 Pa. 176, distinguished; Reading v. Savage, 120 Pa. 198, overruled.

2. Wherefore, cities incorporated prior to the passage of said act but re-incorporated under the provisions of said section, acquire the powers conferred by § 20, clause 32, and § 37, of said act, respecting the assessment and collection from abutting owners of the expenses of grading streets and alleys.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 295 January Term 1888, Sup. Ct.; court below, No. 11 October Term 1886, C. P.

On April 30, 1888, the decree of the court below, ERMENTROUT, J., making absolute a rule to strike off a municipal claim for lien filed in favor of the city of Reading v. Robert H. Savage, for the expense of grading Thirteenth street, was affirmed. On October 29, 1888, a re-argument of the cause was ordered and a writ of certiorari then issued whereon the record was returned to this court. The facts upon which the questions considered arose sufficiently appear in the former report of the case: Reading v. Savage, 120 Pa. 198.

Arguments.

*Mr. William J. Rourke, City Solicitor,* and *Mr. I. H. Burns* (with them *Mr. H. A. Knapp*), for the plaintiff in error:

1. Prior to the passage of the act of May 23, 1874, P. L. 230, there were quite a number of cities, every one of which had its own local or special laws, passed by the legislature to suit each and every locality, and consequently there was such diversity of laws that no two cities stood upon the same plane. The evil that the constitution designed to remedy was not so much results, as the methods by which those results were brought about. What that instrument was desired to accomplish was to do away with the possibility of having local laws enacted by the locality and not by the legislature. Under these circumstances, what was the legislature to do? To pass one general law for every city in the state, repeal all special or local laws, and abrogate all vested rights? Certainly not. To avoid that very thing § 57 was inserted in the act.

2. The act of 1874, when it received the approval of the governor became a perfect law. It was not an invitation; it needed no ratification. It was not a delegation of legislative power, and lacked none of the qualities of command and prohibition essential to every law. And it was a general law, because no city of the third class is perpetually excluded from its operation. The time of its approval is the time that must be consulted in order to determine whether it is a local or a general law. If it was a general law when it was approved, then, no matter what has been done since, it remains the same and cannot be affected thereby.

3. But the learned court below ruled that the act was unconstitutional because by § 57, cities of the third class have the option of becoming subject to its provisions or not, and relied entirely upon Scranton Sch. D.'s App., 113 Pa. 176. But that section contains a provision rendered legal by all experience in efforts to apply general laws to specific cases of corporations already in existence. It gives the benefit of the general law to all willing subjects of the commonwealth who wish to avail themselves of it,—not as to whether the law shall exist, which would be delegated legislation, but as to the time when it shall take effect. And why is this not proper in the case of city municipalities when it is the law to-day in boroughs, because they have the right to say when they will become subject to

the general borough law? Would it be special legislation to allow a railroad corporation to accept the privileges of the general railroad law? This has been done time and again and never questioned.

4. The provisions of § 57 of the act of 1874, are not similar to the proviso to § 5, act of March 18, 1875, P. L. 17, held to be unconstitutional in Scranton Sch. D.'s App., 113 Pa. 176: Von Storch v. Scranton, 3 Pa. Co. Court R. 567. The act of 1874 is a general law and is not dependent on the choice of the city, as was the case with the act of 1875. The time when it shall take effect is a matter of choice of the locality to be incorporated. The repeal of local laws is by legislative mandate therein; the time is when the governor issues the certificate. It does not rest on the choice of the city except incidentally: Locke's App., 72 Pa. 491. Under Wheeler v. Philadelphia, 77 Pa. 338, and Kilgore v. Magee, 85 Pa. 401, the power to classify cities, provided that the act of classification would include those that might come into existence in the future, will hardly be questioned. The act of 1874, therefore, as regards cities of the third class, must be considered as lawful, as if it embraced all the cities in the state. Suppose then that it included all cities, but, being couched in general terms and containing no repealing clause, it would not have the effect of repealing special laws, and that cities having such special laws would continue to operate under them. Would the act be unconstitutional because the existence of certain unrepealed special laws would not permit it to take effect? Seifried v. Commonwealth, 101 Pa. 200, and Evans v. Phillipi, 117 Pa. 226, conclusively establish that it would not. But the same reasoning is not applicable to the act of 1875.

5. Frost v. Cherry, 122 Pa. 417, in which Mr. Justice PAXSON said that the test of local legislation was not results but possibilities, is not in conflict with the views here presented. In that case this court properly pronounced an act unconstitutional because it broke up a general law into local fragments, and because it was in direct violation of that provision of the constitution which provides that no local law shall be enacted by the partial repeal of a general law. Section 28, article III.; § 8, article IX.; § 10, article XVII., of the constitution, are clear recognitions of legislative action to be enforced only by

the approval of another body. In the matter of statutory enactments there are numerous examples: Act of April 21, 1869, P. L. 87; Evans v. Phillipi, 117 Pa. 237; Locke's App., 72 Pa. 491; Act of April 16, 1875, P. L. 55; Barrett's App., 116 Pa. 486; Act of May 29, 1885, P. L. 29; Pittsburgh's App., 115 Pa. 4.

*Mr. G. A. Endlich* and *Mr. C. H. Ruhl* (with them *Mr. Daniel Ermentrout*), for the defendant in error:

I. The answer to the entire argument attacking the conclusion reached by this court upon the former hearing of the present case, seems perfectly plain.

1. Whether an act is a general or special one is exclusively a matter for the court, and not a legislative question: Ayars' App., 122 Pa. 266.

2. A statute, which is general in form, is not to be deemed a special one because its application to some portion of the state is prevented by the existence of local laws enacted before the adoption of the constitution of 1874, and unrepealed by the statute or expressly saved by it: Evans v. Phillipi, 117 Pa. 226, 236. Hence the act of 1874 might not have been a special one if it had expressly saved existing local charters, or had been silent upon the question of their continued operation, and it had been found that there was no repeal of them to be implied from the act.

3. But the question of implied repeal is a judicial, and not a legislative one: United States v. Claflin, 97 U. S. 546. It is for the courts to ascertain which local acts, if any, are to be deemed repealed by a general statute. This function may, no doubt, be directed by a legislative declaration that the general statute shall be held to repeal all, or no, local laws conflicting with it or covered by its provisions. But if the legislature assume to ascribe to the statute the effect of repealing certain local laws, so far as they are inconsistent, while leaving in force certain others irrespective of their consistency, etc., with it, it is difficult to see how this can be anything but special legislation pure and simple.

4. The 57th section of the act of 1874, in effect and in form, amounts to a legislative declaration that it shall not be held to repeal any local laws, whether consistent or inconsistent with

it, except in such cases in which cities shall desire, and their councils, by ordinance, shall give to the act a contrary effect: Vacation of Henry St., 123 Pa. 346; and in these special cases it shall operate to the precise extent of actual antagonism between the earlier and later law, as a repeal of the former.

5. It has never been doubted that an act, depending for its operation in any municipality of the state upon its adoption by the people or the authorities of the same, was, even before the constitution of 1874: Evans v. Phillipi, 117 Pa. 226, 238; and still is. Frost v. Cherry, 122 Pa. 417, a local and special law.

6. It follows, that, as § 57 makes the operation of the act of 1874 in any existing city, and its effect as a repeal of local laws therein, dependent, not upon the terms of the act as they might be construed by the courts, nor upon any general declaration of their effect upon such existing local legislation, but upon its adoption by that particular city, the form as well as the substance of the act renders it impossible that the same should operate at all, except as a special act. "Nor would it make any difference were every (city) in the state to vote the same way. The test is not results, but possibilities:" Frost v. Cherry, supra.

7. Nor is anything gained by viewing § 57 as a mere postponement of the time when the act of 1874 is to go into operation in any particular city. No doubt the legislature may pass an act to take effect at a future date certain: Sanders v. Commonwealth, 117 Pa. 293; or even upon the happening of a future contingency: Parker v. Commonwealth, 6 Pa. 507, 525; Lothrop v. Stedman, 42 Conn. 583; The Aurora v. United States, 7 Cranch 382. But it must be a general act, and the condition must be one of general and simultaneous occurrence. If it were otherwise, it is clear, that, as the court is bound to sustain an act of the legislature upon any possible sound theory, it could never have declared an act void because of its containing an option clause; and that the legislature would be at liberty to pass any quantity of special acts, otherwise in the guise of general statutes, but with "postponement of operation" at the option and convenience of every individual county, city, borough, or township.

II. Another objection to the act of 1874, not urged upon

the former argument, may be here suggested. It contains in § 57, a fatal delegation of legislative power to cities. Locke's App., 72. Pa. 491, decided in 1873, upon an act passed in 1871, merely establishes that, where the legislature passes an act in all its parts completely operative proprio vigore, depending upon nothing further for its mandatory and binding efficacy in a portion of the state, it may, at the same time, allow the people of that section to determine an incidental question of administrative policy by a vote, the result of which may, in effect, turn a partial prohibition expressly enacted by the statute into a total prohibition, which the statute equally sanctioned and provided for by its terms. "But," adds Mr Justice AGNEW, "if . . . . . the law . . . . . was a mere invitation to the people to issue their subsequent mandate, and to breathe into it all its vitality, and thus give to it all its validity and binding efficacy as a law, we might have to concede the conclusion that there was a delegation to the people of the power to legislate."

1. This is precisely what the 57th section of the act of 1874 does. As a mandatory law, either presently or at any future date, the act of 1874 applied only to cities "to be hereafter incorporated." So far as existing cities were concerned, it "left the halls of legislation," "an imperfect and unfinished act, a mere invitation," etc. Nor can it be denied that the act is one "affecting the property and binding the political and social rights of the citizens," and hence contains in § 57 a delegation of legislative power, which, under the unreversed effect of Parker v. Commonwealth, 6 Pa. 507, is unconstitutional: Commonwealth v. Judges, 8 Pa. 391, 395.

III. As to the instances cited in plaintiff's paper book of constitutional grants to inferior legislative bodies of advisory or quasi-legislative powers, all that need be said is that they are strictly in the line of administrative delegations sanctioned by previous decisions of this court; and that the enumeration of them in the fundamental law, if it proves anything, proves, upon the principle that expressio unius est exclusio alterius, that even the right to delegate these powers was deemed excluded by its other provisions, and is to be treated as exceptional to the prohibition against special legislation or the requirement of regulation by general laws. Moreover, the

permission to private corporations to accept an act of assembly, stands on a wholly different footing from a similiar permission to municipalities. The latter, as against the state, have no vested rights standing in the way of the application of a general law: Hagerstown v. Sehner, 37 Md. 180; Moers v. Reading, 21 Pa. 188; and the design of article III., § 7, of the constitution is to " prohibit the doing by local or special laws of that which can be accomplished by general laws:" Ayars' App., 122 Pa. 266.

PER CURIAM, February 4, 1889:

In view of the importance of an early decision of this case we have concluded to enter judgment in advance of the opinion, which will be filed later, by Mr. Justice GREEN.

> The judgment heretofore entered by this court is vacated; the order of the court below striking off the lien, and quashing the writ of scire facias and all proceedings thereon, is reversed and set aside; the lien and all proceedings therein are reinstated, and a procedendo awarded.

OPINION, MR. JUSTICE GREEN:

In the case of the Appeal of the City of Scranton School District, 113 Pa. 176, the question before us was the constitutionality of the proviso to the fifth section of the act of March 18, 1875. That proviso is in these words: "That no city, of the third class, nor any city of less population than ten thousand inhabitants, heretofore incorporated, shall become subject to the foregoing provisions of this act until the same are accepted by an ordinance duly passed by a majority of the members elected to each branch thereof voting in favor of the same and approved by the mayor."

In its literal terms this is a disabling and an excluding enactment. No city of the third class, nor any city of less population than ten thousand inhabitants, previously incorporated, could become subject to the provisions of the act until the passage and approval of an appropriate ordinance, although such city might have already formally accepted the provisions of the act of May 23, 1874, by complying with the require-

ments of the fifty-seventh section of that act, and thereby entitled itself to a place among the cities of the third class. The act of 1875, therefore, had no application to any of these cities in the first instance. Hence there was not, and there could not be, any class of cities covered by the description contained in the proviso, until a class was made up by individual accessions, which, naturally, would occur, if at all, only in an isolated and special manner. As to all those which had been previously incorporated, a double acceptance was made necessary, first of the provisions of the act of 1874 under the fifty-seventh section of that act, and second, of the provisions of the act of 1875 under the proviso of the fifth section. The proceedings upon acceptance under the two acts are quite dissimilar, and without a strict conformity to both no city previously incorporated could have the benefit of the act of 1875. Those cities which in reality did accept under both acts would thus in fact become a class by themselves, and that class could only be made up by individual accessions from time to time. But it might very easily happen that only a single city, or at most a few, would adopt the double acceptance made necessary by the act of 1875, and in that event the new class thus created would be limited to that one or those few. This result, which was entirely possible, made the legislation local and brought it into conflict with the seventh section of the third article of the constitution. This is what was decided, and all that was intended to be decided, in the Scranton School District case.

In the present case the question for decision is upon the effect of the fifty-seventh section of the act of May 23, 1874, P. L. 230. The material portion of that section is in these words: "Any city of the third class, or any city of less population than ten thousand inhabitants, heretofore incorporated, may become subject to the provisions of this act governing cities of the third class to be hereinafter incorporated; and the mayor and councils of such city may effect the same by an ordinance thereof duly passed by a majority of the members elected to each branch thereof voting in favor of the same."

This is an enabling, and in no sense a disabling enactment. The act in its previous sections had provided for the establishment of a class of cities to be called cities of the third class and to be thereafter incorporated. This portion of the act had

universal application over all parts of the state and is clearly a general law.   Into this class it was made competent for any city having the requisite population, and also for any city having less than ten thousand inhabitants, but all of which had been previously incorporated, to come, so as to be governed by those provisions of the act of 1874 which relate to the government of cities of the third class, by pursuing the directions of the fifty-seventh section.   Those directions provide practically for the properly authenticated surrender of the old charter, and formal acceptance of the provisions of the act of 1874, with a suitable protection for special privileges and franchises not inconsistent with the act, and for other matters of detail incident to the change.   When the requirements of the fifty-seventh section are complied with in any given case of a pre-existing city, such city enters into the third class of cities whose future incorporation has been provided for, and becomes a constituent part thereof.   No city is prevented from doing this, and all have the opportunity of doing it.   Those that do not embrace the opportunity simply remain as they were before, and all that do embrace it become members of a class whose existence and all the elements of whose government are regulated by general law.   There is no possibility of any exercise of the powers or privileges, conferred by the fifty-seventh section, which can work affirmatively a local or special result.   Whatever is done by virtue of this section simply converts that which was, or might be, local or special, into that which is general.   In no manner can that which is local in city charters be accomplished by accepting the provisions of the section, and therefore we are of opinion that the section is not in conflict with the constitution.   Something of these views has found expression in the cases of Evans v. Phillipi, 117 Pa. 226, and In re Henry St., 123 Pa. 346.

Doubt having arisen in our minds respecting the correctness of our first decision of the present case we ordered its re-argument of our own motion, so that there might be a further consideration of the question involved.   After a more exhaustive argument and a deliberate review of our former judgment, we are satisfied it was a mistake and we therefore correct it. It is satisfactory to know that while the case is still within our reach we are able to correct our own error.   It follows that the judgment of the court below must be reversed.