## COMMONWEALTH v. G. M. REYNOLDS ET AL.
## COMMONWEALTH v. H. C. REICHARD ET AL.

APPEALS BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued October 30, 1890*—Decided January 5, 1891.

[To be reported.]

1. A clause in an act for the government of cities of a certain class, providing that existing cities of that class shall be subject to its provisions when they shall have accepted the same, will be sustained as constitutional, if the exercise of the power thus delegated will necessarily tend

---

* Heard, by advancement, in the Western District.

Statement of Facts.

to uniformity: Evans v. Phillipi, 117 Pa. 226; Henry St., 123 Pa. 346: Reading v. Savage, 124 Pa. 328.

2. If, however, the tendency of such a provision, in the particular case, is not to uniformity, but to diversity and to the production of results that are special and local, it will render the provision unconstitutional: Scranton Sch. D.'s App., 113 Pa. 190; Reading v. Savage, 124 Pa. 328; and the test is, not results actually produced, but possibilities: Frost v. Cherry, 122 Pa. 427.*

3. The act of May 23, 1889, P. L. 274, relating to school districts in cities of the third class, violates § 7, article III., of the constitution and is wholly void; because, as it permits existing cities of that class, incorporated by special laws, to accept its provisions, without at the same time accepting those of the act of May 23, 1874, P. L. 230, authorizing the classification, its tendency is to diversity, and not to uniformity.

4. The intent of the act of May 31, 1889, P. L. 418, repealing § 28, act of May 4, 1871, P. L. 548, creating independent school districts for the city of Wilkes-Barre, was that the city should become a single school district, under the general act of May 8, 1854, P. L. 617, at the end of the current year, contemplating an election for school directors for the same at the spring election of 1890.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 6, 84 January Term 1891, Sup. Ct.; court below, Nos. 125, 109 October Term 1890, C. P.

On June 11, 1890, upon the petition of Mr. Alfred Darte, District Attorney, filed to No. 109 October Term 1890, in the court below, the court awarded a writ of quo warranto against H. C. Reichard and fourteen others, requiring the defendants to show by what authority they claimed to exercise the office of school directors in the school district of the city of Wilkes-Barre. Issue. On June 13, 1890, upon a similar petition, filed to No. 125 October Term 1890, a writ of quo warranto was awarded against G. M. Reynolds and five others, requiring the defendants to show by what warrant they claimed to have and enjoy the powers of school directors of said city. Issue.

The following conceded facts appeared in the pleadings in the two cases:

The city of Wilkes-Barre was incorporated by the special act of May 4, 1871, P. L. 539, comprising within its area the whole of the former borough of Wilkes-Barre, and parts of the north and south districts of Wilkes-Barre township. The city was

---

* See Wyoming St., Pittsburgh, post., 494.

Statement of Facts.

divided into fifteen wards.   By § 28 of the act, it was provided
that the wards of the city, which had been a part of the north
district of said township, should, together with the remaining
portion of said north district, constitute an independent school
district, to be called the First School District of the city of
Wilkes-Barre; that the wards of the city, which had been a
part of the south district of the township, should, in connection
with the remaining portion of said district, constitute an inde-
pendent district, to be called the Second School District of the
city of Wilkes-Barre; and that the wards, which had consti-
tuted the borough of Wilkes-Barre, should be an independent
district, to be called the Third School District of said city.

The act of May 23, 1889, P. L. 274, provided that any city
of the third class, incorporated after its passage, should consti-
tute a single school district; and ordained regulations for the
organization and management of such districts, directing, inter
alia, that the members of the board of school controllers of the
district should be elected by wards, each ward electing one mem-
ber in cities composed of fifteen or more wards.   The ninth
and tenth sections of the act provided a method by which cities
of the third class, incorporated prior to its date, might accept
and become subject to its provisions, through action by the
board or boards of school directors of the city, formally declar-
ing their purpose so to do, the acceptance to take effect upon
being filed and recorded in the office of the clerk of the Court
of Quarter Sessions of the proper county.

On May 31, 1889, an act of assembly was approved, repeal-
ing § 28 of the act incorporating the city of Wilkes-Barre,
with the proviso that the act should not go into effect until
from and after the first Monday of June, 1890: P. L. 418. .

In January, 1890, the city of Wilkes-Barre being then a city
of the third class, but not having accepted the provisions of
the act of May 23, 1874, P. L. 230, the directors of the several
school districts of the city, residing within its limits, adopted
formal resolutions accepting the provisions of the act of May
23, 1889, and certified copies of these resolutions were pre-
sented to the clerk of the Court of Quarter Sessions, for filing,
on February 10, 1890.*

---

* The clerk refused to file these resolutions, upon the ground that the
act of May 23, 1889, was unconstitutional.   Upon application to the Court

Statement of Facts.

At the regular election held on February 19, 1890, doubts existing as to what statute should govern the election, two tickets were voted for. The citizens elected by wards, in accordance with the provisions of the act of May 23, 1889, a board of fifteen school controllers, who were the defendants in the case of the Commonwealth v. Reichard and others, and there was also elected, by the votes of the people at large, a board of six directors, in accordance with the provisions of the common school act of May 8, 1854, P. L. 617. The defendants, in the case of Commonwealth v. Reynolds and others, constituted the board of school directors of the Third School District of the city of Wilkes-Barre, in office at the time of the passage of the acts of May 23, and May 31, 1889, having been elected under the provisions of § 28 of the act incorporating the city. They alleged that under § 3, act of May 8, 1854, P. L. 617, their powers and duties as school directors continued until the proper election and organization of a new board of directors, and that no such board had been lawfully elected or appointed, and organized, contending that the act of May 23, 1889, P. L. 274, was wholly unconstitutional, and that, as the act of May 31, 1889, P. L. 418, was, by its terms, not to go into effect until from and after the first Monday in June, 1890, there was no authority for the election of a board of school directors for the entire city, in February, 1890.

The answer of the defendants in each case alleged that the election of the board of six directors, chosen on February 19, 1890, was illegal, for the reason that no legal notice of such an election was given beforehand, nor was there general knowledge among the electors of the city that such officers would be chosen. It was agreed by the parties that the question of fact thus raised should be determined by the court, upon testimony heard, and the court found the facts to be as follows:

1. The high constable's proclamation did not give notice of an election of six directors, by the voters at large, but did give

of Common Pleas, a peremptory writ of mandamus, commanding him to file them, was awarded, and on appeal from the order awarding this writ, the Supreme Court on June 2, 1890, affirmed the decree, holding that the clerk, as a ministerial officer, had no right to decline to receive and record the resolutions, and that the question of the constitutionality of the act could not be raised in that way: Commonwealth v. James, 135 Pa. 480.

notice of an election of one director, by the electors of each ward.

2. Three thousand seven hundred and fifty votes, in the aggregate, were cast in the several wards for fifteen ward directors, under § 2, act of May 23, 1889, which we have held to be unconstitutional. One thousand one hundred and eighty-four votes for a board of six directors, were cast in the city at large under the act of 1854. The maximum vote cast for any officer was 4024 for the office of high constable.

3. The fact that the city had accepted the provisions of the act of May 23, 1889, and therefore had become a consolidated school district, was generally known. That there would be an election of six directors, was discussed and advised in the daily newspapers and by citizens, and tickets were generally distributed at the several polls.

4. There were no opposing candidates for election to the board of six, and it is fair to infer that this fact, rather than the lack of general knowledge, accounts for the comparatively small number of votes.

The two causes having been heard at the same time, the court, RICE, P. J., on July 18, 1890, entered judgment for the commonwealth in each case, holding: (1) That § 2, act of May 23, 1889, which provides for the election of school directors by wards in cities of the third class governed by its provisions, was unconstitutional, as a local or special law, inasmuch as the management of public schools is not one of the corporate powers of cities of the third class, and school directors are not corporate officers thereof, and there are no manifest peculiarities of school districts, coterminous with cities of either of the three classes, which clearly distinguish them, as a class, from school districts in other cities, and imperatively demand legislation for their government not adapted to the needs of others, and, therefore, that the board composed of the fifteen directors elected by wards in February, 1890, had no lawful existence. (2) That § 1, act of May 23, 1889, providing that each city of the third class subsequently incorporated should constitute a single school district, and § 9, in so far as it provides that existing cities of that class may become single districts by acceptance of the act, were constitutional and valid, and that by

accepting said act, the city of Wilkes-Barre became a single school district, so that the electors at large, and not by wards, were entitled, under the act of May 8, 1854, P. L. 617, to elect a board of six school directors at the municipal election in February, 1890. And (3) that such an election having been held, and the persons receiving the certificates of election having duly organized, and it not appearing clearly that there was lack of general knowledge that such a board was to be elected, the six persons so chosen were entitled to act and perform the duties of directors, at least until duly ousted.

—The defendants, in Commonwealth v. Reynolds and others, thereupon took the appeal to No. 6 January Term 1891, specifying that the court erred:

1. In entering judgment against said defendants.

2. In holding § 1, act of May 23, 1889, P. L. 274, constitutional.

3. In holding § 9 of said act constitutional.

And the defendants, in Commonwealth v. Reichard and others, took the appeal to No. 84 January Term 1891, specifying that the court erred:

1. In entering judgment against the appellants.

2. In holding § 2, act of May 23, 1889, unconstitutional.

*Mr. Alexander Farnham,* for the appellants, in Commonwealth v. Reichard, No. 84:

The court erred in holding § 2, act of May 23, 1889, to be unconstitutional. A statute prescribing how many members shall constitute a board of school directors, and how they shall be elected, can hardly be regarded as a regulation of "the affairs" of the school district; and if the constitution of a board is not among such affairs, it is not one of the subjects upon which the constitution inhibits special or local legislation. If, however, § 2 can be regarded as regulating the affairs of the district, still, such legislation, based upon classification, is valid, being justified by the necessity of adapting the details of the school system to the varying needs and circumstances of cities diverse in their characteristics: Wheeler v. Philadelphia, 77 Pa. 351; Walker v. Cincinnati, 21 Ohio St. 14 (8 Am. Rep. 24); State v. Brewster, 3 Am. & Eng. Corp. C. 551; State v. Powers, 38 Ohio St. 54; Scowden's App., 96 Pa. 425; Ayars' App., 122 Pa. 266; Kilgore v. Magee, 85 Pa. 401.

Counsel for the commonwealth in No. 84 presented no paper-book, and were not heard.

*Mr. Allan H. Dickson* and *Mr. Henry W. Palmer*, for the appellants in Commonwealth v. Reynolds, No. 6 :

The act of May 23, 1889, P. L. 274, relates only to cities of the third class thereafter incorporated, and to such existing cities of that class as may, by vote of their directors, accept its provisions. It provides for the cities to which it relates various regulations which are inconsistent with and essentially different from those ordained by the common-school law of May 8, 1854, P. L. 617. We claim that the act of May 23, 1889, violates several provisions of the constitution.

1. It violates § 7, article III., prohibiting special legislation regulating the affairs of school districts, changing school districts, creating school districts, or regulating the management of public schools; and also § 1, article IX., providing that all taxes shall be levied and collected under general laws. It is unnecessary to discuss §§ 2 to 6 of the act, as the court below is with us in holding them unconstitutional, and this position is sustained by the decisions of this court: Ruan St., 132 Pa. 257 ; Ayars' App., 122 Pa. 266. The question for discussion here is as to the validity of §§ 1 and 9. The classifications contained in § 1 make it void. The power to classify cities extends only to matters relating to the exercise of corporate powers, or to corporate officers and their powers and duties : Ruan St., supra. It does not include the classification of school districts in cities, and no imperious necessity therefor has been shown. Furthermore, the legislature can no more classify school districts, according to the date of the creation of the city, than it can make any other time or geographical classification. If local results are or may be produced by a statute, it is unconstitutional: Scranton Sch. D.'s App., 113 Pa. 190 ; Frost v. Cherry, 122 Pa. 417.

2. Nor can §§ 1, 7 and 9 stand, when the rest of the act falls. The statute has not two distinct objects, but its one purpose is to regulate school districts in cities of the third class, by giving them a different scheme of government from districts in other cities. The court has no power wholly to change this intent, and to substitute a purpose plainly never

Arguments.

contemplated by the legislature. The different provisions of the act are so interwoven that it must speak as an entirety : Commonwealth v. Potts, 79 Pa. 164; Ayars' App., 122 Pa. 266 ; Reading v. Savage, 124 Pa. 328. And, as amended by the court below, the statute offends also against § 3, article III., of the constitution, because its title does not fit it when so amended. There is no purpose mentioned in the title that is accomplished by the act, as the court below left it, and such a title, if the act were composed of only §§ 1, 9 and 10, may reasonably be characterized as misleading. The title must clearly give notice of the legislative purpose : Sewickley Bor. v. Sholes, 118 Pa. 165; Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219. This title gives no notice that the act affects the township districts, and for that reason it is inadequate : Beckert v. Allegheny, 85 Pa. 192; Airy St., 113 Pa. 281.

3. The act violates § 1, article XI., of the constitution, vesting the legislative power of the commonwealth in the general assembly, inasmuch as the breath of life comes to the act from the school boards, and not from the legislature. The legislature cannot delegate its power. There are a number of recognized instances in which the legislature may submit to the people of a locality a question as to the executive administration of a law, complete in itself and operative throughout the state, but the act before us, as amended by the court below, is clearly distinguishable from those cases. There is no person, thing or corporation in the state upon which it can operate, except by the affirmative act of school directors in certain cities ; it provides no rule of action as to circumstances actually existing or contingently possible, except by the intervention of a board of school directors who are to say when it shall go into effect; and it is not a law, but merely an invitation to school directors to make a law. What the legislature may not do directly, it cannot accomplish in this manner : Frost v. Cherry, 122 Pa. 417. The act creates confusion and uncertainty, and tends to diversity, and is therefore void : Scranton Sch. D.'s App., 113 Pa. 190.

*Mr. Henry A. Fuller* (with him *Mr. James L. Lenahan*), for the commonwealth, appellees in No. 6 :

By the general school law every city, not subject to a special

law, is a single school district governed by six directors, to be chosen by the electors at large: §§ 1, 5, act of May 8, 1854, P. L. 617. Six directors were so chosen in Wilkes-Barre on February 19, 1890, but the validity of their election is denied by the appellants, on the ground that the city was then subject to a special law, to wit, § 28 of the act of incorporation.

1. Section 28 of the act incorporating Wilkes-Barre is unconstitutional and void ab initio, because relating to a subject not expressed in the title, which makes no reference to schools: Second Constitutional Amendment of 1864; Ayars' App., 122 Pa. 266. That section, however, was repealed by the act of May 23, 1889, P. L. 274, which constituted every city of the third class, thereafter incorporated, a single school district, and empowered school boards, in existing cities of that class embracing more than one district, to accept the act. Wilkes-Barre's school boards having accepted it, it is claimed by the appellants that said act of 1889 is unconstitutional, but the question in this case is narrowed down to §§ 1 and 9, and these operate simply as a repeal of a special law.

2. It is constitutional to legislate that all cities of a certain class shall be single school districts. This does not involve the power to classify school districts in respect to government, and does not constitute a classification of cities for school purposes; it simply defines the geographical boundaries of school districts in the only natural and convenient manner, to wit, by reference to the geographical boundaries of existing municipalities. It is constitutional to confine such an act to cities afterwards incorporated or accepting its provisions. The omission of existing cities not regulated by special law, is the omission of mere surplusage, as they are already single districts; and the omission of cities which are regulated by special law, until they accept the act, is not a violation of the constitution: Evans v. Phillipi, 117 Pa. 226 ; Reading v. Savage, 124 Pa. 336.

3. The delegation to the school boards within the city limits of the power to accept the act, is constitutional: Locke's App., 72 Pa. 496 ; Reading v. Savage, 124 Pa. 328. There are two distinct objects in the act: consolidation and government. The first is effected by §§ 1, 7, 8 and 9; the second by §§ 2, 3, 4, 5 and 6. The first set of sections is territorial in scope and the second governmental. The two are absolutely distinct and not

essential to each other.   Therefore §§ 1 and 9 can be sustained, though the other sections be pronounced unconstitutional: Smith v. McCarthy, 56 Pa. 359; Dewhurst v. Allegheny, 95 Pa. 437; Lea v. Bumm, 83 Pa. 237; Fox's App., 112 Pa. 337; Ruan St., 132 Pa. 257.   The title gives distinct notice of the constitutional purpose of the act, to wit, consolidation, and was sufficient notice to the township districts of the change the act would effect as to them.

4. But even if the act of May 23, 1889, be overthrown, the express repeal, by act of May 31, 1889, P. L. 418, of the local law by which the separate districts were created, supports the relator's contention.   It may be argued that, as the act of May 31, 1889, did not take effect until the first Monday in June, 1890, the single district did not exist at the time of the election in February, 1890.   But we submit that the election in February of six directors for a district, sure to exist in June at the beginning of the next school year, is valid.   If this be not so, these separate districts are maintained until February, 1891, contrary to the express legislative command that they should cease to exist in June, 1890.

## NO. 6.

Opinion, Mr. Justice Clark:

The importance of this case, and the necessity for a speedy decision, in view of the approaching spring elections, induced us to advance the hearing; it was accordingly certified to the Western District, and was heard at the October Term in Pittsburgh.   The contest is a triangular one.   The city of Wilkes-Barre has the extreme misfortune, at this time, to have three different and distinct boards of school directors, each claiming the right to manage and regulate the common schools of that city; and, as each of these several and respective boards is represented in the two appeals entered in this court, it is our duty to determine, under the somewhat complicated condition of the law affecting the schools of that city, which of these three boards of school directors is the legal and rightful board, entitled to exercise the powers and duties pertaining to that office.

The city of Wilkes-Barre was incorporated by special act of assembly, approved May 4, 1871, P. L. 539, its area comprising all of the then borough of Wilkes-Barre, and portions of the

territory of the north and south districts of Wilkes-Barre township.

By the provisions of the 28th section of the city charter, that portion of the north district remaining in the township was attached to the portion embraced in the city limits for school purposes, and this constituted the First District; and that portion of the south district remaining in the township was attached to the portion included in the city limits for school purposes, and constituted the Second District; whilst the territory embraced in the borough of Wilkes-Barre constituted the Third District.

On May 31, 1889, an act of assembly was approved repealing the 28th section of the charter, with a proviso, however, that the repeal should not go into effect until from and after the first Monday of June, 1890: P. L. 418. In the meantime, however, on May 23, 1889, an act of assembly was passed, entitled "An Act constituting each city of the third class a single school district, providing for the election of school controllers, the levy and collection of taxes, and the management of its affairs;" the provisions of which act, the city of Wilkes-Barre, being a city of the third class, in pursuance of the fifth section thereof, in January, 1890, formally accepted.

At the February election, in the year 1890, the qualified voters of the city elected a general board of fifteen school controllers, chosen pursuant to the second section of the act of May 23, 1889, one from each ward, and upon a general ticket elected, also, a board of six school directors, under the general common-school law of May 8, 1854, P. L. 617. (1) The board of ward directors claim to exercise the office, alleging the act of May 23, 1889, to be wholly constitutional; (2) the board of six directors at large claim to be the rightful board, alleging the act to be constitutional, if constitutional in any part, in the first and ninth sections only, and that the election under the second section was invalid; whilst (3) the old board maintain that the act of May 23, 1889, is wholly unconstitutional and void; that the act of May 31, 1889, did not take effect until after the first Monday in June, 1890; that the election in February, 1890, was therefore without authority of law, and that by the act of 1854, § 3, their powers and duties are continued until a new board of directors is properly elected and organ-

ized.   The members of these several boards, Nos. 1, 2, and 3,
each claim to exercise the office of school director or controller,
and are the contestants in these cases.   The questions to be
determined, therefore, are, first, the constitutionality of the act
of May 23, 1889; and second, the effect of the repealing act
of May 31, 1889.

As to board No. 1 it is contended, that the act of May 23,
1889, is in contravention, first and principally, of article III.,
§ 7, of the constitution, and also with article IX., § 1; arti-
cle III., § 3, and article XI., § 1.

Prior to the adoption of the constitution of 1874, and the
passage of the act of May 23, 1874, P. L. 230, entitled " An
Act dividing the cities of the state into three classes," etc.,
" and providing for the incorporation and government of cities
of the third class," the several cities of the commonwealth ex-
ercised their corporate powers and were regulated in their
municipal affairs by local and special laws; consequently,
there was such diversity of charters that no two cities stood
upon the same plane.   The constitution of 1874, however,
article XV., § 1, provided that cities might be chartered when-
ever a majority of the electors of any town or borough, having
a population of at least ten thousand, should at any general
election vote in favor of the same; but it was further pro-
vided, inter alia, article III., § 7, that the general assembly
should not pass any local or special law incorporating cities,
changing their charters, regulating their affairs, or prescribing
the powers and duties of their officers, nor any local or special
law changing school districts, or regulating their affairs or pre-
scribing the powers and duties of officers therein.

By the act of 1874, which was the first general law on the
subject, it was provided, " that for the exercise of certain cor-
porate powers, and having respect to the number, character,
powers, and duties of certain officers thereof," the cities then
in existence, or thereafter to be created, should be divided into
three classes: those containing a population of 300,000 to con-
stitute the first class; those containing a less population and
exceeding 100,000, the second class; and those containing less
than 100,000, and exceeding 10,000, the third class.   The city
of Philadelphia was the only city of the first, and Pittsburgh
the only city of the second class; but there were a number of

Opinions of the Court.

cities of the third class holding distinct and special charters, each being different in its provisions from the others. It was to remedy this evil, and to promote uniformity in the municipal government of cities in their corporate affairs, that the provisions referred to were inserted in the constitution; and it was to carry the constitutional provisions into effect that the act of 1874 was passed. It was further provided in the act of 1874, however, that the corporate powers, etc., of cities of any class, then in existence by virtue of special laws or charters, should remain under and be governed by these special laws or charters, except as otherwise provided by that act. Although the purpose of the act of 1874 was to provide a new and general system for the government of cities, it did not apply in the first instance to cities existing by special charter. But, in order that it might be considered a general law, it was not required that it should repeal all the local and special laws and charters of existing cities. The act is general, because it was passed for the whole state, and upon a surrender or repeal of these special charters, it would be applicable and operative throughout the state, without any change or amendment thereof: Evans v. Phillipi, 117 Pa. 226 ; In re Henry Street, 123 Pa. 346.

In the several sections of the act, specific and general provisions are made for the future incorporation of cities of the third class, prescribing the method of conducting the election, and of obtaining the letters-patent, defining the corporate powers and also the number, character, and duties of the officers, etc. The act, in this respect, applies only to cities of the third class thereafter incorporated, but in the 57th section a method is provided by which cities of this class having special charters may come in under the general law. The 57th section provides:

" Any city of the third class, or any city of less population than 10,000 inhabitants, heretofore incorporated, may become subject to the provisions of this act, governing such cities of the third class to be hereafter incorporated; and the mayor and councils of such city may effect the same by an ordinance thereof, duly passed by a majority of the members elected to each branch thereof voting in favor of the same ; and a certified copy of such ordinance, approved by the mayor, etc., shall be

forwarded to and filed in the office of the secretary of this commonwealth, and when so filed the governor shall, under the great seal of the commonwealth, certify the surrender of the former charter and the acceptance of the provisions of this act, etc., and from the date of such certificate the said city shall be governed, controlled and regulated by and under the provisions of the act," etc.

· The surrender of the special charter and the acceptance of the general law of the state, are proper matters of municipal legislation, under the provisions of the act of 1874, and were therefore appropriately submitted to the legislative powers of the city; and, as the members of this legislative body were chosen in view of the provisions of the act, they may be said to act in a representative capacity in passing the ordinance which brings the city under the general law.

But the act cannot be considered a local or special law because it became applicable to such other cities of the third class, only, as might accept its provisions, in the manner stated. The case of Reading v. Savage, 124 Pa. 328, is exactly in point. In that case we said: "When the requirements of the fifty-seventh section are complied with, in any given case of a pre-existing city, such city enters into the third class of cities, whose future incorporation has been provided for, and becomes a constituent part thereof. No city is prevented from doing this, and all have the opportunity of doing it. Those that do not embrace the opportunity simply remain as they were before, and all that do embrace it become members of a class whose existence and all the elements of whose government are regulated by general law. There is no possibility of any exercise of the powers or privileges conferred by the fifty-seventh section which can work affirmatively a local or special result. Whatever is done by virtue of this section simply converts that which was, or might be, local or special, into that which is general." As each city of the third class accepts its provisions, the diversity of city charters is diminished to that extent, and uniformity follows in the proportion that these acceptances are increased, until, as contemplated by the legislature, the municipal government of all such cities shall be the same. The hope that this consummation may be reached is founded in the facts that special legislation, in aid of cities existing by special char-

ter, is prohibited, and that, in the changing conditions incident to their growth in population and wealth, they will ultimately find their interests best protected in the wise and beneficent provisions of the general system.

In Scranton School D.'s App., 113 Pa. 190, a widely different question was presented. The question in that case was upon the act of March 18, 1875, P. L. 15, which, as a supplement to the act of May 23, 1874, made certain other provisions for the government of cities of the third class, providing for the appointment of assessors, the classification of real estate for taxation, and for the assessment and collection of taxes, etc.

The fifth section of the act contained the following proviso: "Provided that no city of the third class, nor any city of less population than ten thousand inhabitants, heretofore incorporated, shall become subject to the foregoing provisions of *this* act, until the same are accepted by an ordinance, duly passed by a majority of the members elected to each branch thereof voting in favor of the same, and approved by the mayor." The effect of this proviso, if the act was constitutional, was, that the act should not apply, unless formally accepted, to any city of the third class, etc., incorporated prior to March 18, 1875, even though that city had already accepted the provisions of the act of May 23, 1874, or had in fact been incorporated under that act. In Reading v. Savage (supra) we said: "As to all those which had been previously incorporated, a double acceptance was made necessary; first, of the provisions of the act of 1874, under the fifty-seventh section of that act, and second, of the provisions of the act of 1875, under the proviso of the fifth section. The proceedings upon acceptance under the two acts are quite dissimilar, and, without a strict conformity to both, no city previously incorporated could have the benefit of the act of 1875. Those cities, which in reality did accept under both acts, would thus in fact become a class by themselves, and that class could only be made up by individual accessions from time to time. But it might very easily happen that only a single city, or at most a few, would adopt the double acceptance made necessary by the act of 1875, and in that event the new class thus created would be limited to that one or those few." The test, as we said in Frost v. Cherry, 122 Pa. 427, " is not results, but possibilities;" and, if the act of 1875 had been sustained,

it was possible for us to have cities of the third class: (1) by special charter as before; (2) cities of the third class under the act of 1874; and (3) cities of the third class under the acts of 1874 and 1875. The elective clause in the act of 1874 was sustained, because its exercise necessarily tended to uniformity, whilst a similar clause in the act of 1875 was condemned, because its exercise tended to diversity.

With this plain and obvious distinction in view, we come to consider the act of May 23, 1889, P. L. 274. It is entitled, "An act constituting each city of the third class a single school district, providing for the election of its school controllers, the levy and collection of taxes and management of its affairs." It contains provisions wholly different from those of the act of 1874; it not only changes the provisions contained in the general act, but adds other and entirely new provisions relating to the affairs of the schools, and of the school districts. It applies only to the cities of the third class thereafter incorporated, but in the ninth section it is provided as follows: "Any city of the third class, now incorporated, may accept and become subject to the provisions of this act by resolutions of the school boards of such city, duly passed by a majority of the members elected in each of such separate districts thereof, voting in favor of the same," etc.

It is plain that this provision is precisely similar, in effect, to the act of 1875, which was passed upon in Scranton School D.'s Appeal (supra): its tendency is not to uniformity, but to diversity; its results are not general, but special and local. It will be observed that, "any city of the third class," incorporated before its passage, whether by special charter or under the general law of 1874, may accept its provisions, and any of such cities may refuse to accept them. Wilkes-Barre is a city of the third class by special charter. The local authorities of the city have not yet accepted the provisions of the act of 1874, but desire to avail themselves of the act of 1889, which is not an amendment to the act of 1874, but an original act. If the act of 1889 is sustained, we are liable to have cities of the third class: (1) by special charter as before; (2) by special charter and under the act of 1889; (3) under the general act of 1874; and (4) under the acts of 1874 and 1889. Another such statute would double these possibilities, and each succeeding simi-

lar enactment would double the possibilities then existing. This diversity, thus increasing in a geometrical ratio, would result in a confusion and disorder with which the evils of undisguised special legislation cannot be compared. In order to procure special legislation upon any subject relating to the government of cities, it would only be necessary to procure the passage of a law, in general form, with the specific and special features desired, with a provision that it should apply only to such cities as might accept it; and it would be possible, in this form of legislation, for each city of the third class in the state to have, to some extent, its own peculiar system, with like effect as if enacted by special law.

The legislature, in the act of 1874, provided a general system, upon which are found all the cities thereafter incorporated, and upon which are to be put, ultimately, all other cities of the third class, as beads are put upon a string. The system may be strengthened or extended, but it cannot be parted or divided. The loose beads, as they are taken up, must be put upon the string, and not upon one of the strands of which the string consists. The system, under the constitution, is necessarily an entirety; and the special charter city, in passing upon the acceptance of its provisions, under an elective clause such as is contained in the act of 1874, must decide to take all or none of them.

We are of opinion, therefore, that the act of May 23, 1889, is in contravention of article III., § 7, of the constitution of the state, and that upon this ground the entire act is void. In this view of the case, it is unnecessary to consider the act with reference to the other provisions of the constitution referred to.

The effect of this is to take the act of May 23, 1889, out of the case, which disposes of the pretensions of board No. 1, and narrows the controversy to the boards Nos. 2 and 3; the former elected upon general ticket, under the school law of 1854, and the latter under the 28th section of the original charter, and claiming to hold over until a new board is lawfully elected and organized.

The 28th section of the original charter was repealed by the act of May 31, 1889. The repeal, however, it is argued, was "not to go into effect until from and after the first Monday of June, 1890," but it *was* to go into effect then, and it is difficult

to see how it could go into effect under the act of 1854, without a proper board of school directors under that act. The effect of the act of May 31, 1889, was, undoubtedly, to constitute the city a single school district, under the general law of 1854; but the act was "not to go into effect" so as to remove the existing boards, or to change or embarrass the operation of the schools, until the end of the current school year. The act contemplated an election of school directors, or controllers, at the spring election of 1890; under a different act, perhaps, but the legislative purpose undoubtedly was that a legally elected and properly constituted board of school directors or controllers would be chosen, to give the act its proper effect at the end of the current year. The act of May 23, 1889, having failed in its effect, and the 28th section of the charter having been repealed, the city, in the absence of any other provision, became a single district under the first section of the act of May 8, 1854, and the election, held under the fifth section of that act, provided a competent board with full authority to take charge of the affairs of the school district at the opening of the new year; that board was duly organized, and its members are the respondents in this case.

In the court below it was argued that the election under the act of 1854 was irregular, and void for want of a proclamation and notice thereof, but we understand this to be abandoned.

Judgment affirmed.

NO. 84.

OPINION, MR. JUSTICE CLARK:

For reasons given in the case of the Commonwealth ex rel. v. G. M. Reynolds, et al., at No. 6 January Term 1891,

The judgment is affirmed.