# Moll *v.* Morrow, Appellant.

*Municipalities—Cities of second class—Bureau of Public Morals —Act of June 27, 1913, P. L. 638—Constitutional law—Constitution of Pennsylvania, Article III, Section 20—Equity—Injunction.*

The Act of June 27, 1913, P. L. 638, providing for the creation of a Bureau of Public Morals in the Department of Public Safety in cities of the second class is unconstitutional, as delegating municipal functions to a special commission in violation of Section 20, Article III, of the Constitution of Pennsylvania.

Argued March 27, 1916.   Appeal, No. 31, Oct. T., 1916, by defendants, from decree of C. P. Allegheny Co., Jan. T., 1915, No. 218, in equity, overruling demurrer to bill in equity in case of Charles G. Moll v. Eustace S. Morrow, Controller of the City of Pittsburgh, and Arthur G. Burgoyne, Jr.   Before BROWN, C. J., MESTREZAT, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity to enjoin the city controller of the City of Pittsburgh from approving and countersigning war-

rants for salary and expenses of Arthur G. Burgoyne, Jr., Superintendent of the Bureau of Public Morals in the Department of Public Safety, and to enjoin him from performing any duty or municipal function as superintendent of said bureau.

It appeared that on May 1, 1914, by ordinance of council a Bureau of Public Morals was created and established in the Department of Public Safety in the City of Pittsburgh. The ordinance was enacted under the authority of the Act of June 27, 1913, P. L. 638, to appropriate the sum of $3,000 for the payment of the salary of the superintendent. The mayor and councils appointed a board of seven directors and the board organized and appointed Arthur G. Burgoyne, Jr., superintendent, whereupon the superintendent and the board entered upon their duties.

The plaintiff, a taxpayer, filed a bill in equity to restrain the board from exercising its powers and the controller of the city from countersigning warrants upon the ground that the board was a special commission exercising a municipal function. After a hearing on bill and answer, the court dismissed the bill.

On demurrer to the bill, MACFARLANE, J., filed the following opinion:

The bill questions the constitutionality of the Act of June 27, 1913, P. L. 638, "providing for the creation of the Bureau of Public Morals in the Department of Public Safety in cities of the second class, defining its purposes, and providing for the payment of expenses incurred thereby." The first section creates a Bureau of Public Morals in the Department of Public Safety in cities of the second class for the purpose of investigating and acting upon all questions and conditions arising from sex relationship affecting public morals. The second section provides for a board of seven directors appointed by the mayor and confirmed by council, the directors, who are subject to removal at the pleasure of the mayor, to elect from their own body a superintendent.

Section 3 confers full power on the board to investigate conditions growing out of sex relationship affecting public morals and to enforce laws and prosecute violations in matters of sex relationship and for that purpose they shall exercise such police powers as may be necessary, the business and policies of the board to be determined by a majority vote. Section 4 provides that there shall be detailed such policemen and detectives as the board may require from the regular police and detective force, subject to the approval of the director of the department of public safety, and during the time they are detailed they shall be subject to the orders of the board of directors through the superintendent and be responsible to the board. The board may appoint and employ additional investigators. Section 5 provides for the employment of clerical help.

This board of directors is not a bureau in the department of public safety, and calling it so does not help matters. The directors have full power to direct the work of the bureau and have dominion over all "sex relationship affecting public morals." The detail of policemen and detectives from the regular force is subject to the approval of the director of the department, but he must obey the requisition and his only discretion is in approving the choice of individuals. The men are subject to the board of directors only. "The disguise is so thin that it can scarcely be called one": Perkins, et al., v. Philadelphia, 156 Pa. 554. All other bureaus are subordinate to and under the control of the heads of departments of which they are a part. This only is equal in authority and power. There is no question that the legislature can establish almost any form of government it pleases and that it may subdivide municipal functions, create departments, bureaus and other agencies and change them. But the question is not determined by what might have been done. There has been created for cities of the second class a form of government. This bureau is alien from it in every characteristic. By the

Act of March 7, 1901, P. L. 20, (3 Purdon 3009) the executive power is vested in the mayor. Nine executive departments are established, changed to ten by the Act of April 1, 1909, P. L. 83, (5 Purdon, 5757). The heads of departments must present annual reports to the mayor. Their accounts are subject to examination. Councils may provide by ordinance for bureaus, clerks and officers. Departments must furnish information to the mayor or councils. All the heads and subordinates must give bonds. The department of public safety is under the charge of one director and the administration of police affairs is in charge of this department. There is a system of supervision and control making it a responsible government.

The Act of 1913 does not create a new department. Without any amending or repealing clause it establishes a separate board of directors to administer a part of the police affairs of the city, expressing, but not carrying out the intention to create a bureau. It creates neither a bureau nor a department subordinate to the mayor, in whom is vested the executive power of the city. It is a special agency for the performance of a municipal function.

Section 20, Article III, of the Constitution is, "The general assembly shall not delegate to any special commission......any power to......perform any municipal function whatever." This forbids the delegation of the police power to any special board of directors. Under the existing municipal government this board is special and distinct. This is the real intent and purpose of the act.

The objection to the Penn Avenue commission, (Act of April 2, 1870, P. L. 796), was that the commissioners were independent of the proper municipalities and not agents of the city. They were not municipal officers. They were special for a special purpose. Judge WHITE said, "It is true that, before a set of commissioners can be elected for the improvement of any street, the councils

must pass an ordinance directing the improvement and authorizing an election of commissioners. But that exhausts the powers of the councils in the premises, except to demand a bond, as above stated. The commissioners derive all their powers directly from the act of assembly. By the express terms of the act the powers are delegated to the commissioners and not to the city.......I understand this Twentieth Section, of Article III, as a positive prohibition against municipal functions being exercised by anybody, except the regular municipal authorities." Referring to municipal agents or employees, he said : "They cannot be an independent body, they cannot have the municipal power delegated to them, so as to be beyond removal, supervision or control from the regular municipal authorities": Mellon v. Pittsburgh, et al., 21 P. L. J. 185, 186 (O. S.). In Perkins v. Philadelphia, supra, an act abolishing the commissioners of public buildings and transferring the building formerly under their control to the control of the department of public works was held to violate this section of the Constitution. It was held that this was creating another commission, even though the director was by general law an officer of the city. The special and unusual power given him to be exercised in a special manner with reference to one particular building constituted a special commission delegated to him. It was immaterial that the municipal functions were being exercised by the head of the department of the municipal government, for the commission was special.

The public morals board of directors is not beyond removal, yet it is beyond control. It is created by the legislature not as a part of the established system. It is a special agency for a special and limited purpose.

The act is clearly in conflict with the fundamental law. The great evils of special commissions led to the adoption of this section and it prohibits not only those of identical character but all others coming within its plain meaning.

We think the title of the act is sufficient to direct at-

tention to the fact that the bureau will incur expenses and that it will perform its functions through agents and employees and this would include the appointment of a superintendent.

We are unable to see any conflict between it and Section 7, Article III, prohibiting laws granting powers or privileges where the granting of such powers and privileges shall have been provided for by general law. The remaining objection that the act is special legislation was not pressed. So far as it applies to cities of the second class, it is general.

The court overruled the demurrer. Defendants appealed.

*Error assigned,* among others, was the decree of the court.

*B. J. Jarrett,* with him *C. A. O'Brien,* for appellants.

*Denis Æ. Behen,* for appellee.

PER CURIAM, April 17, 1916:

This decree is affirmed, at appellants' costs, on the opinion of the court below, overruling the demurrer to the bill of complaint.