## Magoun et al. v. Dauphin County Pennsylvania Authority et al.

402

[redacted]

*Earl V. Compton,* for plaintiffs.
*Thomas R. Wickersham,* for defendants.

WICKERSHAM, J., February 15, 1937.—This case comes before us on plaintiffs' bill of complaint raising various questions hereinafter referred to, voluminous in character, the answer of the Commonwealth's Secretary of Highways by the Attorney General, raising preliminary objections to the bill of complaint, and answer and a supplemental answer of Harry T. Neale, D. A. Elias, A. G. Knisely, Jr., John Craig and George A. Hoverter, and a motion of counsel for plaintiff for decree on bill and answer.

Plaintiff's bill of complaint alleges the incorporation of the Dauphin County Pennsylvania Authority, and that the expenses incident to the forming of said corporation and the publishing of notices have been paid from the funds of the County of Dauphin to the extent of $500; that said Dauphin County Authority passed a resolution authorizing a proposed contract for the sale of bonds of the authority to provide funds for the purchase of the Market Street Bridge, and the Clarks Ferry Bridge, said bonds to be secured by a trust indenture to be executed by defendant, Dauphin County Pennsylvania Authority, which will provide that said bonds and other bonds issued pursuant to the contract for the sale thereof will be secured by a first lien on the tolls from said bridges and other bridges to be acquired by said authority; that said Dauphin County Authority proposes to purchase the said Market Street Bridge for a sum exceeding $2,000,000; that the said procedure will increase the indebtedness of

the County of Dauphin beyond that now allowed by law without the consent of the electors. The bill of complaint alleges further that the Secretary of Highways notified these bridge companies that he had taken possession of said bridges and henceforth all tolls collected therefrom should be for the use and benefit of the Commonwealth pursuant to Act of April 27, 1927, P. L. 395, as amended. Said bill of complaint also alleges in several paragraphs that the Municipality Authorities Act of June 28, 1935, P. L. 463, is unconstitutional and its acts ultra vires for reasons therein stated, and prays for equitable relief.

The answer of the Secretary of Highways raises preliminary objections to the bill of complaint for various reasons therein set forth, in which it appears that he prays the court to dismiss said bill of complaint at the cost of plaintiff. If the court be of opinion that the reasons advanced in paragraph 1 of this answer are insufficient for the dismissal of plaintiff's bill of complaint, then said secretary contends that the Municipality Authorities Act of 1935, supra, is constitutional; that the general purposes of said act are not sufficiently broad in their scope or purpose to permit a municipal authority, which might be incorporated under its terms, to take steps towards acquisition of existing toll bridges; that the Dauphin County Pennsylvania Authority does not have authority to take steps towards acquisition of the toll bridges a portion of which lies outside the territorial limits of Dauphin County; that a toll bridge is the property of a public service company under and subject to the regulations of the Public Service Commission of the Commonwealth of Pennsylvania, and section 11 of the Municipality Authorities Act forbids taking the property of a public service company.

Said Secretary of Highways further moves the court to postpone consideration of the questions of fact or law raised by plaintiff's bill of complaint for the reasons therein stated, which are, briefly: The people of the Com-

monwealth of Pennsylvania and the General Assembly have indicated by constitutional amendment and statute that the Secretary of Highways is the appropriate governmental agency for the public acquisition of existing toll bridges in Pennsylvania; the said secretary by appropriate action has indicated his intention of acquiring the property of the aforesaid toll bridges; the question whether the Secretary of Highways has authority to take possession of said toll bridge property is now pending in this court in equity proceedings; the rights of said secretary to condemn and acquire existing toll bridges, other than those now pending in the equity proceedings hereinbefore referred to, are presently in litigation before the Court of Common Pleas of Cumberland County; and the sovereign, the Commonwealth of Pennsylvania, having begun the exercise of its rights and powers to condemn and take the said bridges, such rights and powers, so far as they are possessed by the sovereign, are paramount to any rights which the Dauphin County Pennsylvania Authority may now have or later acquire.

The answer of the other defendants admits all of the allegations of the bill of complaint except paragraphs 23, 24 and 25, which are denied. In their supplemental answer they plead the equity proceedings had in this respect in the County of Cumberland.

### Question involved

Should the Dauphin County Pennsylvania Authority, under the circumstances as they now exist, be permitted by this court to purchase the Market Street Bridge?

### Discussion

The question of the purchase of the Market Street Bridge has been under discussion and judicial opinion on several occasions. An application was made to President Judge Reese of Cumberland County to appoint viewers. He appointed viewers to assess damages which would be due and owing to the Harrisburg Bridge Company in the

event that this property was taken over by the Commonwealth. Objections were made to the Court of Common Pleas of Cumberland County and all of the questions involved were disposed of by President Judge Reese in an opinion so thorough and exhaustive as to leave no question or doubt as to the law or the facts involved. From this adjudication and judgment of the Court of Common Pleas of Cumberland County an appeal was taken to the Supreme Court, which appeal was dismissed.

We are not advised as to the further proceedings in the Court of Common Pleas of Cumberland County, and until we are so advised we cannot act on the request of the Dauphin County Pennsylvania Authority to purchase this bridge. It may well be that this equitable proceeding should be had in the Court of Common Pleas of Cumberland County; from the inception of the proceedings they have been in that court.

Certainly there cannot be two purchasers of this bridge. Until we are advised, therefore, that the Commonwealth has abandoned its intention to acquire the property, which proceedings were instituted prior to the presentation of plaintiff's bill, we think this action on the part of plaintiff is premature and cannot be sustained.

It seems obvious to us that the proceedings suggested in the instant case should not prevail over the action on the part of the Commonwealth previously commenced in the Court of Common Pleas of Cumberland County to have the value of the bridge fixed by viewers. After the proceedings by the viewers have been completed and their report presented to the Court of Common Pleas of Cumberland County, then the Commonwealth may elect whether it will take possession of the bridge and pay the damages, or whether the proceedings will be discontinued. We think, therefore, that the Dauphin County Pennsylvania Authority should not be permitted to enter into negotiations to purchase the bridge at this time.

The Dauphin County Pennsylvania Authority is a duly incorporated corporation having existence separate and

distinct from that of the municipality of Dauphin County and its existence began upon the issuance of its certificate of incorporation by the Secretary of the Commonwealth: Municipality Authorities Act of 1935, supra, section 2(e).

Nothing in the Municipality Authorities Act or in the law gives the authority corporation any right or power to expend the moneys of the municipality of Dauphin County, and therefore, if expenditures of moneys by Dauphin County are to be restrained, the proper authorities of the County of Dauphin must be the parties to be restrained and not the authority corporation. Nothing in the Municipality Authorities Act nor in the law gives the County of Dauphin power to expend moneys in behalf of expenses and purchases by the Dauphin County Pennsylvania Authority, and as to those moneys alleged by the bill of complaint to have been already spent, if improperly spent, there is an adequate remedy at law available to plaintiff, to wit, surcharge; and as to those moneys which it is alleged are to be spent in the future, there is no power in the county to expend the same and, even if the County of Dauphin has the power to expend the same, the remedy of plaintiff must be sought against the county and not against the authority corporation.

It is alleged by counsel for plaintiff that the Municipality Authorities Act of 1935 is unconstitutional and void. With this contention we cannot agree. A statute will be declared void only when it violates the Constitution clearly, palpably, plainly and in such manner as to leave no doubt or hesitation: Tranter v. Allegheny County Authority et al., 316 Pa. 65, 66. In construing ordinary words of the Constitution they must be given the popular and general sense in which they were understood by the electors voting for or against its adoption: Ibid. In the Tranter case, which concerns the Allegheny County Authority created by the Act of December 27, 1933, P. L. 114, it was held:

"The Act of December 27, 1933, Special Session, 1933-1934, P. L. 114, does not violate article II, section 1, vesting legislative power in the General Assembly, by empowering the county commissioners to take the steps necessary to obtain the charter for the Authority.

"Such act is not a local or special law within the meaning of article III, section 7 and section 34, though it applies only to counties of the second class of which at the moment there is but one.

"The corporation authorized to be created by the Act of 1933, is not a special commission, private corporation or association, within the prohibition of article III, section 20, nor does such act authorize supervision or interference with municipal improvements or property in the sense contemplated by the Constitution."

We are of opinion that this citation is authority for our conclusion that the Act of 1935 does not offend either against the Constitution of Pennsylvania or the Fourteenth Amendment to the Federal Constitution.

In determining whether any legislative or municipal act conflicts with the Constitution, its substance, and not its form, must always be the test: Kelley v. Earle et al., 320 Pa. 449. This was a taxpayer's bill in which the plaintiff sought to enjoin the enforcement of the General State Authority Act of June 28, 1935, P. L. 452, and the injunction prayed for was granted. Dissenting opinions were filed and upon reargument the court reached a contrary opinion and the plaintiff's bill was dismissed.

We think the Tranter case as finally decided supports the contention of the Commonwealth in the instant case. The Municipality Authorities Act provides in its title as follows:

"Providing, for a limited period of time, for the incorporation, as bodies corporate and politic, of 'Authorities' for municipalities; defining the same; prescribing the rights, powers, and duties of such Authorities; authorizing such Authorities to acquire, construct, improve,

maintain, and operate projects, and to borrow money and issue bonds therefor; providing for the payment of such bonds, and prescribing the rights of the holders thereof; conferring the right of eminent domain on such Authorities; authorizing such Authorities to enter into contracts with and to accept grants from the Federal Government or any agency thereof; and for other purposes."

Under authority of the act, the Dauphin County Pennsylvania Authority was duly incorporated, as appears by the pleadings. Its purposes and powers appear in section 4 of the act, which are very general, and said section contains the following proviso:

"Provided, however, that the Authority shall have no power at any time or in any manner to pledge the credit or taxing power of the Commonwealth of Pennsylvania or any political subdivisions, nor shall any of its obligations be deemed to be obligations of the Commonwealth of Pennsylvania or of any of its political subdivisions, nor shall the Commonwealth of Pennsylvania, or any political subdivision thereof, be liable for the payment of principal of or interest on such obligations."

We look in vain through the provisions of the act to find any place where plaintiff in this case will be affected as a taxpayer, and therefore, he is not an interested party to act as plaintiff in the bill of complaint.

In conclusion, we are of opinion that the Dauphin County Pennsylvania Authority is without power to acquire the bridges mentioned in the bill except, if at all, by purchase from the bridge owners, and since the bill does not aver either an option to buy or a contract to buy either or both of said bridges with their respective owners, nor even negotiation tending toward the purchase of either, there is no real controversy here upon which the court is asked to pass. The bill amounts merely to an effort to have the court render an advisory opinion or an opinion in the nature of a declaratory

judgment, which cannot affect plaintiff in any manner however it might be decided and can be of no benefit to anyone except possibly those who propose to purchase the bonds, which, from everything that can be gathered from the bill, will never be issued.

We are of opinion, therefore, that the answer raising preliminary objections to the bill of complaint must be sustained and plaintiff's bill dismissed.

And now, February 15, 1937, it is ordered, adjudged and decreed that the allegations in the answer raising preliminary objections to the bill of complaint are sustained and plaintiff's bill is dismissed at plaintiff's cost.